UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

JOSEPH B. PIERRE,

                            Plaintiff,                        **MEMORANDUM & ORDER**
                                                              18-CV-6383 (MKB) (ST)
              v.

ROCHDALE VILLAGE INC.,

                            Defendant.
-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiff Joseph B. Pierre, proceeding *pro se*, commenced the above-captioned action on November 5, 2018, against Defendant Rochdale Village Inc. pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (Compl., Docket Entry No. 1.) Plaintiff alleges that Defendant, his former employer, discriminated against him based on his religion and national origin and retaliated against him for filing a complaint against a supervisor who made disparaging remarks to Plaintiff based on his national origin. (*Id.* at 5.) Defendant moves to dismiss the Complaint or stay the action and compel arbitration pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), and Plaintiff opposes the motion.[1]

       For the reasons set forth below, the Court grants the motion and stays the action. The Court denies Defendant's request for attorneys' fees and costs associated with its motion.

---

[1] (Def.'s Mot. to Dismiss & Compel Arb. ("Def.'s Mot."), Docket Entry No. 35; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 38; Def.'s Reply Mem. in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 49; Pl.'s Mem. in Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry No. 46; Pl.'s Sur-Reply in Opp'n to Def.'s Mot., Docket Entry No. 52.).

## I. Background

The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order. In light of Plaintiff's *pro se* status, the Court also considers and assumes the truth of the factual allegations in Plaintiff's opposition. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (finding that district courts may consider factual allegations made by a *pro se* party in his papers opposing a motion to dismiss).[2]

### a. Factual background

#### i. Plaintiff's employment and termination

Defendant manages Rochdale Village, a 120-acre housing cooperative in Jamaica, Queens. (Decl. of Jay Williams in Supp. of Def.'s Mot. ("Williams Decl.") ¶¶ 4–5, Docket Entry No. 37.) On November 21, 2011, Defendant hired Plaintiff to serve as a public safety officer at Rochdale Village. (*Id.* ¶ 13.) Beginning "around 2016," Plaintiff was told to salute his superior officer, Chief Pearson, but refused to do because of his religion (Voodoo). (Compl. 4–5, 14.) Pearson forced Plaintiff to write and submit a report about why he could not salute her. (*Id.* at 14.) Plaintiff requested a copy of the report but was refused one. (*Id.*)

---

[2] The Court also considers the documents attached to the Complaint. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (holding that courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and other documents "integral" to the complaint (first quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); and then quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (alteration in original) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004))). In addition, because the attachments to the Complaint, Plaintiff's opposition, and the attachments to Plaintiff's opposition are not consecutively paginated, the Court refers to the page numbers assigned by the electronic court filing system.

Sometime later, another of Plaintiff's supervisors allegedly fabricated a report against Plaintiff and threatened him, stating "you be careful." (*Id.*) In addition, someone poured an offensive-smelling liquid in Plaintiff's work locker, ruining his uniform and other belongings. (*Id.*)

In May of 2018, another of Plaintiff's supervisors, Sergeant Ernest Gaither, told Plaintiff, "I fired [seventy-five] people already, you Haitians think you are sharp, I am sharper." (*Id.* at 5, 14.) Plaintiff filed a petition to demote or terminate Sergeant Gaither due to his behavior. (*Id.* at 5, 14.)

On June 4, 2018, Plaintiff was terminated for allegedly violating a lunch policy.[3] (*Id.* at 5.) Plaintiff alleges that his termination was in retaliation because he "stood [up] for [him]self" by refusing to salute Chief Pearson and writing a petition against Sergeant Gaither. (*Id.* at 14.)

### ii. Arbitration agreement

During the relevant time period, Plaintiff was a union employee represented by the Special and Superior Officers Benevolent Association (the "Union") and covered by a series of collective bargaining agreements (collectively, the "CBA") between the Union and Defendant. (Williams Decl. ¶ 9.) Articles 16 and 17 of the CBA describe the grievance and arbitration procedures for represented employees. (*See* CBA 26–28, annexed to Pl.'s Opp'n, Docket Entry No. 46-2.) Article 16 defines a grievance as "any dispute arising during the term of [the CBA] between an employee or [the Union] and [Defendant]" and lays out a three-step internal dispute resolution process. (*Id.* at 26–27.) Article 17 provides that the Union may appeal to arbitration

---

[3] Defendant contends that Plaintiff was terminated on May 17, 2018. (Def.'s Mem. 4 (citing Decl. of Jay Williams in Supp. of Def.'s Mot. ("Williams Decl.") ¶ 13, Docket Entry No. 37).)

any grievances not resolved during the three-step process and that such disputes "shall be referred . . . by the Union in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association ["AAA"] then prevailing in the City of New York." (*Id.* at 28.) Employment discrimination claims, "including claims made pursuant to Title VII," are "subject to the grievance and arbitration procedure as the sole and exclusive remedy for violations." (*Id.* at 27.)

### iii. Plaintiff's grievance and administrative filings

Prior to commencing this action, Plaintiff submitted a grievance to the Union on June 12, 2018, alleging wrongful termination based on the events described above. (Grievance 4, annexed to Pl.'s Opp'n, Docket Entry No. 46-2; Pl.'s Opp'n 4.) In addition, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 3, 2018. (Compl. 12.) On July 27, 2018, Plaintiff, the Union, and Defendant participated in a Step 3 Grievance Hearing pursuant to the CBA's mandatory grievance procedures, after which Defendant issued a decision sustaining Plaintiff's termination. (Reply Decl. of Jay Williams in Supp. of Def.'s Mot. ("Williams Reply Decl.") ¶ 5, Docket Entry No. 47; *see* Pl.'s Opp'n 4.)

On August 16, 2018, Plaintiff emailed Defendant's Assistant General Manager Jay Williams regarding his recent termination and the Union's failure to take action and requested a meeting to discuss his termination. (Rochdale Emails 11, annexed to Pl.'s Opp'n, Docket Entry No. 46-2.) Williams replied that he was out of the country but copied Defendant's Human Resources Director Dolores Benner on the email "to help expedite the review of [Plaintiff's] termination." (*Id.*) On August 22, 2018, Plaintiff and the Union's president, Ronald Fedrizzi, attended a second hearing with Defendant. (Pl.'s Opp'n 4.) Plaintiff maintains that, prior to the hearing, he communicated to Fedrizzi a desire to arbitrate his claims, to which Fedrizzi

4

responded, "[w]e cannot win arbitration," and that after the hearing, Fedrizzi told Plaintiff he would get his job back. (*Id.*)

Several weeks later, on September 14, 2018, Plaintiff emailed Fedrizzi informing him that he was dissatisfied with Fedrizzi's representation at the grievance hearings. (Union Emails 9, annexed to Pl.'s Opp'n, Docket Entry No. 46-2; Pl.'s Opp'n 5.) Fedrizzi responded, "[w]hen we left the meeting you were positive on how you were represented and now because you filed an EEOC claim and they don't want to bring you back you are claiming that my representation of your [sic] was somehow flawed or lack[ing]." (Union Emails 8; Pl.'s Opp'n 5.) Plaintiff responded, in pertinent part, "If [I] don[']t get my job back[,] we are going to arbitration. You simply refused to go to arbitration." (Union Emails 8.)

On October 5, 2018, Plaintiff filed a charge with the National Labor Relations Board ("NLRB") alleging that the Union had "failed and refused" to process his grievance. (Charge Against Labor Organization 1, annexed to Pl.'s Opp'n, Docket Entry No. 46-2.) The NLRB investigated the charge and dismissed it on January 17, 2019. (Letter from NLRB dated Jan. 17, 2019, at 2, annexed to Pl.'s Opp'n, Docket Entry No. 46-2.) Plaintiff appealed the dismissal and NLRB denied his appeal on February 25, 2019. (Letter from NLRB dated Feb. 25, 2019, at 13, annexed to Pl.'s Opp'n, Docket Entry No. 46-2.) The appeal denial letter states that the Union "thoroughly considered the evidence presented by [Defendant] and made a good faith determination it would not succeed at arbitration," and that the Union "communicated to [Plaintiff] the reasons that it would not pursue [his] grievance to arbitration." (*Id.*) Both the Union and Defendant received copies of the dismissal and the appeal denial. (Pl.'s Opp'n 5.) Defendant maintains it is "unaware of any [Union] demand to submit [Plaintiff's] grievances . . . to binding arbitration." (Williams Decl. ¶¶ 9, 13; Williams Reply Decl. ¶ 5.)

5

Plaintiff seeks compensatory damages in the amount of $1,000,000 for psychological suffering and compensation for the years he would have worked for Defendant but for his termination on June 4, 2018. (Compl. 6.)

### b.  Procedural background

Plaintiff filed the Complaint in this action on November 5, 2018. (Compl.) Defendant filed its answer to the Complaint on February 15, 2019. (Answer, Docket Entry No. 10.) Plaintiff then requested that the case be designated for the Court-Annexed Mediation Advocacy Program. (Letter dated Mar. 6, 2019, Docket Entry No. 14.) Pursuant to Plaintiff's request, Magistrate Judge Steven Tiscione referred the case for mediation. (Order dated Mar. 20, 2019.) On June 25, 2019, the parties jointly requested and received extensions of time to complete mediation and paper discovery for the mediation so that they could focus on settling. (Letter Mot. for Extension, Docket Entry No. 19; Order dated June 25, 2019.) On August 14, 2019, the parties reported at a status conference that mediation had been unsuccessful. (Minute Entry dated Aug. 15, 2019, Docket Entry No. 22.)

By letter dated October 28, 2019, Defendant moved for a pre-motion conference regarding its anticipated motion to dismiss and compel arbitration, for the first time raising the issue of arbitration. (Letter Mot. for Pre-Mot. Conference, Docket Entry No. 23.) The Court granted Defendant leave to file its motion.[4] (Minute Entry dated Nov. 19, 2019.) Defendant filed its motion on January 10, 2020, (Def.'s Mot.), at which time discovery had been limited to preparing for mediation and the settlement conference.

---

[4] On December 5, 2019, the parties attended a settlement conference but were unable to reach a disposition. (Minute Entry dated Dec. 9, 2019.)

6

## II. Discussion

### a. Standard of review

The FAA requires courts to compel arbitration of claims that the parties have agreed to arbitrate. *See AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The Supreme Court has interpreted the FAA as reflecting "'a liberal federal policy favoring arbitration agreements,' and plac[ing] arbitration agreements on 'the same footing as other contracts.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (citations omitted) (first quoting *AT&T Mobility LLC*, 563 U.S. at 346; and then quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)). "It thereby follows that parties are not required to arbitrate unless they have agreed to do so." *Id.* (citing *Schnabel*, 697 F.3d at 118).

"In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). "Before addressing the second inquiry, [the court] must also determine who — the court or the arbitrator — properly decides the issue." *Id.* (citing *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011)). "The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 71 (2d Cir. 2012) (alteration in original) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). Although "[p]arties may delegate threshold arbitrability questions to the arbitrator, . . . [t]o be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ---, ---, 139 S. Ct.

524, 530 (Jan. 8, 2019) (citing 9 U.S.C. § 2); *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019).

In deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment."[5] *Meyer*, 868 F.3d at 74 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)); *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). As such, courts must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)). In addition, courts must "draw[] all reasonable inferences in favor of the non-moving party." *Meyer*, 868 F.3d at 74 (quoting *Nicosia*, 834 F.3d at 229). The party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)). In addition, "[a] district court must stay proceedings once it is 'satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'" *Nicosia*, 834 F.3d at 229 (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)); *see also Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("[A] stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested.").

---

[5] Because Defendant has manifested an intention to arbitrate the dispute, the Court construes Defendant's motion as a motion to compel arbitration. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to compel arbitration brought under [9 U.S.C. § 4], the court applies a standard similar to that applicable for a motion for summary judgment."); *cf. Nicosia*, 834 F.3d at 230 ("When the moving party does not manifest an intention to arbitrate the dispute, *Bensadoun* does not require the district court to convert the motion to dismiss to one to compel.").

8

### b. A valid agreement delegating questions of arbitrability exists

The parties do not dispute the existence or validity of their agreement to arbitrate. (Def.'s Mem. 4; Pl.'s Mem. 2.) Nor do they dispute Defendant's contention that the agreement clearly and unmistakably delegates questions of arbitrability to the arbitrator.[6] (Def.'s Mem. 6. *See generally* Pl.'s Mem.) Rather, the sole issue before the Court is whether Defendant waived its right to compel arbitration. (Pl.'s Mem. 2.) The Court first considers whether waiver is a question of arbitrability presumptively for the Court to decide and, if so, whether that question has also been delegated to the arbitrator.

#### i. Waiver

Plaintiff argues that Defendant waived its right to compel arbitration by participating in this litigation to Plaintiff's prejudice and by delaying, stalling, and ignoring Plaintiff's alleged requests to arbitrate prior to the filing of this suit. (Pl.'s Opp'n 1–2, 5.)

Defendant contends that Plaintiff cannot establish prejudice, which is required for waiver, and that it did not have notice of Plaintiff's desire to arbitrate. (Def.'s Mem. 6; Def.'s Reply 3.)

##### 1. Deciding the issue of waiver

"[O]rdinarily a defense of waiver brought in opposition to a motion to compel arbitration . . . is a matter to be decided by the arbitrator." *Meyer*, 159 F.3d at 80 (alteration in original) (quoting *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 66, 80 (2d Cir. 1998)); *see also Howsam*, 537 U.S. at 85 ("[T]he presumption is that the arbitrator should decide 'allegations of waiver, delay, or a like defense to arbitrability.'" (quoting *Moses H. Cone Mem.*

---

[6] *See Morales v. Rochdale Vill. Inc.*, No. 15-CV-502, 2017 WL 9250352, at *3–4 (E.D.N.Y. Aug. 16, 2017) (reviewing the same CBA at issue when delegation was in dispute and compelling arbitration upon determining that "the parties, by incorporating the AAA rules into the CBA, granted the arbitrator the power to determine arbitrability").

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983))). However, "[w]hen the party seeking arbitration has participated in litigation regarding the dispute, the district court can properly decide the question of waiver." *Meyer*, 159 F.3d at 80–81 (citing *Bell v. Cendant Corp.*, 293 F.3d 563, 569 (2d Cir. 2002)); *Pacelli v. Augustus Intel., Inc.*, 459 F. Supp. 3d 597, 612–14 (S.D.N.Y. 2020) ("[C]ourts may properly adjudicate waiver-based objections to arbitration when the type of waiver alleged is that the party seeking arbitration has participated in litigation on the dispute."); *Syngenta Crop Prot., LLC v. Ins. Co. of N. Am., Inc.*, No. 18-CV-715, 2018 WL 1587601, at *3 (S.D.N.Y. Mar. 29, 2018) ("[T]he Second Circuit has recently reaffirmed that '[w]hen the party seeking arbitration has participated in litigation regarding the dispute, the district court can properly decide the question of waiver.'" (quoting *Meyer*, 868 F.3d at 80–81)); *see also Schreiber v. Friedman*, 15-CV-6861, 2017 WL 5564114, at *9 (E.D.N.Y. Mar. 31, 2017) (same); *Apple & Eve, LLC v. Yantai N. Andre Juice Co.*, 610 F. Supp. 2d 226, 231 (E.D.N.Y. 2009) (same).

"The Second Circuit [has] not . . . squarely addressed the question of whether litigation-conduct waiver is an issue to be decided by an arbitrator when the parties have agreed to have the arbitrator decide questions of arbitrability." *LG Elecs., Inc. v. Wi-LAN USA, Inc.*, No. 13-CV-2237, 2014 WL 3610796, at *3 n.3 (S.D.N.Y. July 21, 2014) (declining to address the question of who should decide waiver when the issue "ha[d] not been adequately raised" and proceeding to decide waiver), *aff'd*, 623 F. App'x 568 (2d Cir. 2015); *Pacelli*, 459 F. Supp. 3d at 614 (citing *LG Elecs., Inc.*, 2014 WL 3610796, at *3 n.3) (noting same). However, one court in this Circuit recently concluded that this question is nondelegable. *Pacelli*, 459 F. Supp. 3d at 614 ("[P]arties cannot delegate to arbitrators the question of whether, under the judge-made principle of litigation-conduct waiver, a party is barred from asserting its right to arbitration."); *see also id.* at

10

614–15 (noting that "[t]he doctrine is based on prejudice from litigation and the interest of the courts in preventing their processes from being used improperly" and that courts are in the best position to evaluate this prejudice and vindicate this interest); *cf. Republic of Ecuador*, 638 F.3d at 394 (referring waiver issue to arbitral panel when parties clearly and unmistakably intended panel to decide questions about the *validity* of the agreement and waiver was based on conduct that "undermin[ed] the agreement" rather than on conduct, like litigation conduct, that waives the right to "tak[e] advantage of an admittedly binding arbitration clause"). *But see CMS Inv. Holdings, LLC v. Castle*, No. 14-CV-9381, 2016 WL 4557115, at *6 (S.D.N.Y. Aug. 31, 2016) (finding litigation-conduct waiver distinguishable from waiver claimed in *Republic of Ecuador* but "discern[ing] no relevant difference" and referring question of waiver to arbitrator).

The Court concludes that it may decide the issue of litigation-conduct waiver in this case. However, whether Defendant waived its right to arbitrate based on delay during the grievance procedure or lacked notice of Plaintiff's desire to arbitrate are procedural questions that are presumptively for the arbitrator to decide.[7] *See Howsam*, 537 U.S. at 85 ("[I]ssues of procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, estoppel, and other

---

[7] The Court notes that, under article 17.1 of the CBA, the decision to appeal an unsettled grievance to arbitration appears to rest with the Union in its discretion. (CBA 28 ("If a grievance has arisen during the term of this Agreement and has been timely presented pursuant to Article XVI of this Agreement, and has not been settled, then *the Union may appeal* the grievance to arbitration . . . ." (emphasis added)).) Further, according to the NLRB, the Union appears to have "made a good faith determination it would not succeed at arbitration . . . [and] communicated to [Plaintiff] the reasons that it would not succeed at arbitration." (Letter from NLRB dated Feb. 25, 2019, annexed to Pl.'s Opp'n, Docket Entry No. 46-2.) Although Plaintiff maintains he reached out to Defendant to pursue arbitration, the email communications he has presented to the Court do not mention arbitration, (*see* Rochdale Emails, annexed to Pl.'s Opp'n, Docket Entry No. 46-2; Reply Decl. of Jay Williams in Supp. of Def.'s Mot. ("Williams Reply Decl.") ¶ 5, Docket Entry No. 47), and it appears, at least from the record before the Court, that the Union did not inform Defendant of Plaintiff's desire to arbitrate after deciding not to pursue arbitration on Plaintiff's behalf, (*see* Williams Decl. ¶¶ 9, 13; Williams Reply Decl. ¶ 5).

11

conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." (emphasis omitted) (quoting Revised Unif. Arb. Act of 2000 § 6(c) cmt. 2, 7 U.L.A. 13)); *Republic of Ecuador*, 638 F.3d at 394 ("[W]e have noted that 'defenses to arbitrability such as waiver, estoppel, or delay' are 'questions properly decided by arbitrators.'" (quoting *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 351 F.3d 43, 46 (2d Cir. 2003) (per curiam))); *Syngenta Crop Prot., LLC*, 2018 WL 1587601, at *3 (distinguishing litigation-conduct waiver from waiver by delay and concluding that "[b]ecause [the plaintiff's waiver argument] is a 'waiver, delay, or like defense to arbitrability,' involving out-of-court conduct, that gateway procedural dispute is presumptively one for the arbitrator" (citation omitted) (quoting *Howsam*, 537 U.S. at 84–85)).

### 2. Waiver by litigation conduct

Federal policy strongly favors arbitration, and waiver of the right to arbitrate "is not to be lightly inferred." *Nicosia v. Amazon.com, Inc.*, 815 F. App'x 612, 614 (2d Cir. 2020) (quoting *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104–05 (2d Cir. 2002) (per curiam)). Indeed, "the rule preferring arbitration, when agreed upon, ha[s] led to its corollary that any doubts concerning whether there has been a waiver are resolved in favor of arbitration." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 228 (2d Cir. 2001) (alteration in original) (quoting *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995)). Nevertheless, a party waives its right to arbitration "when it engages in protracted litigation that prejudices the opposing party." *Tech. in P'ship, Inc. v. Rudin*, 538 F. App'x 38, 39 (2d Cir. 2013) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)*, 226 F.3d 160, 162 (2d Cir. 2000)).

"To determine whether a party has waived its right to arbitration, [courts] consider '(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice.'" *LifeTree Trading Pte., Ltd. v. Washakie Renewable Energy, LLC*, 764 F. App'x 105, 107 (2d Cir. 2019) (quoting *La. Stadium & Expo. Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010)). "There is no rigid formula or bright-line rule for identifying when a party has waived its right to arbitration; rather, the above factors must be applied to the specific context of each particular case." *La. Stadium & Expo. Dist.*, 626 F.3d at 159. However, "[t]he key to a waiver analysis is prejudice. Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." *Sutherland v. Ernst & Young, LLP*, 600 F. App'x 6, 8 (2d Cir. 2015) (quoting *Thyssen, Inc.*, 310 F.3d at 105); *see also Leadertex, Inc.*, 67 F.3d at 25 ("Although litigation of substantial material issues may amount to waiver, delay in seeking arbitration does not create a waiver unless it prejudices the opposing party." (citation omitted)).

### A. Yearlong Delay

Although Plaintiff argues that Defendant waited approximately a year from the time Plaintiff filed the Complaint to raise the arbitration issue, (Pl.'s Opp'n 3), it is well established that delay alone cannot support a finding of waiver. *See, e.g.*, *Thyssen, Inc.*, 310 F.3d at 105 (collecting cases and noting that "[t]his Circuit has refused to find waiver . . . where delay in trial proceedings was not accompanied by substantial motion practice or discovery"); *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985) ("It is beyond question that defendants' delay in seeking arbitration during approximately eight months of pretrial proceedings is insufficient by itself to constitute a waiver of the right to arbitrate . . . ." (citing *Carcich v. Rederi*

*A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968))); *Chehebar v. Oak Fin. Grp., Inc.*, No. 14-CV-2982, 2017 WL 946292, at *2 (E.D.N.Y. Mar. 7, 2017) (collecting cases finding no waiver despite delays from four months to three years).

Rather, the extent of delay must be considered "in conjunction with (1) the amount of litigation that occurred" during the delay and "(2) any proof that [the party opposing arbitration] was prejudiced by [the other party's] conduct during that period." *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108 (2d Cir. 1997) (citing *Leadertex, Inc.*, 67 F.3d at 25); *In re Arb. Between S & R Co. of Kingston & Latona Trucking, Inc.*, 984 F. Supp. 95, 103 (N.D.N.Y. 1997) ("Although delay alone is generally insufficient to deny a petition to arbitrate, it is . . . relevant in determining whether a party has been prejudiced." (citations omitted)), *aff'd sub nom. S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80 (2d Cir. 1998).

### B. Amount of litigation to date

In assessing the amount of litigation for purposes of a waiver analysis, courts find relevant, *inter alia*, any motion practice engaged in by the parties and the extent of discovery the parties have exchanged. *See, e.g.*, *Tech. in P'ship, Inc.*, 538 F. App'x at 39 (affirming district court's finding of waiver where the party asserting waiver "had to defend two substantive motions to dismiss, then produce its witness for deposition, comply with an extensive document request, and participate in extended discovery disputes"); *S & R Co. of Kingston*, 159 F.3d at 83 (observing that the waiver analysis includes consideration of "the amount of litigation (including exchanges of pleadings, any substantive motions, and discovery)").

The lack of substantive motion practice in this case weighs against a finding of waiver. *See Tech. in P'ship, Inc.*, 538 F. App'x at 39. Although Plaintiff has been forced to brief the arbitration issue, neither party has briefed the sufficiency of Plaintiff's allegations or the merits

14

of his underlying Title VII claim or filed any other substantive motions. *Cf. Rush*, 779 F.2d at 888 (explaining that defendants' "motion [to dismiss] alone, however, does not waive the right to arbitrate"); *Murray v. UBS Sec., LLC*, No. 12-CV-5914, 2014 WL 285093, at *6 (S.D.N.Y. Jan. 27, 2014) (collecting cases finding that a defendant's filing of a motion to dismiss does not itself result in a waiver of the right to arbitration).

Similarly, the extent of discovery and other litigation activity in this case prior to Defendant's pre-motion conference letter raising the issue of arbitration weighs against a finding of waiver. Since Plaintiff filed the Complaint, Defendant has filed an answer,[8] and the parties have participated in court-annexed mediation that was ultimately unsuccessful, (Minute Entry dated Aug. 15, 2019), and engaged in settlement negotiations, which also failed, (Minute Entry dated Dec. 9, 2019).[9] No depositions were taken before Defendant raised the issue of arbitration;

---

[8] Plaintiff asserts that Defendant waived the right to compel arbitration because "Defendant's Answer included eleven affirmative defenses, but not one mentioned that Plaintiff was compelled to arbitrate the dispute." (Pl.'s Opp'n 3 (citing *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978, 980 (2d Cir. 1942)).) Defendant contends that it did raise arbitration as an affirmative defense by pleading that "Plaintiff's claims are barred to the extent that Plaintiff failed to timely and properly exhaust all necessary administrative, statutory and/or jurisdictional prerequisites for the commencement of this action." (Def.'s Mem. 6 (citing Answer ¶ 21).) Even if Defendant failed to plead or inadequately pleaded arbitration as an affirmative defense, this fact would be insufficient to establish waiver. *See Rush v. Oppenheimer & Co.*, 779 F.2d 885, 889 (2d Cir. 1985) ("Nor does defendants' service of an answer that contained thirteen affirmative defenses but failed to raise the agreement to arbitrate, constitute a waiver of arbitration. Absent a demonstration of prejudice by [the plaintiff], the bare fact that the defendants filed an answer is inadequate by itself to support a claim of waiver of arbitration." (citing *ITT World Commc'ns, Inc. v. Commc'ns Workers of Am.*, 422 F.2d 77, 82 (2d Cir. 1970))); *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 276 (E.D.N.Y. 2019) (same), *aff'd*, 815 F. App'x 612 (2d Cir. 2020); *see also Reives v. Lumpkin*, 632 F. App'x 34, 35 (2d Cir. 2016) (same); *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105–06 (2d Cir. 2002) (per curiam) (same).

[9] *See Satcom Int'l Grp. PLC v. Orbcomm Int'l Partners, L.P.*, 49 F. Supp. 2d 331, 340 (S.D.N.Y.) (considering settlement conference in assessing amount of litigation), *aff'd*, 205 F.3d 1324 (2d Cir. 1999); *see also NV Petrus SA v. LPG Trading Corp.*, No. 14-CV-3138, 2017 WL

rather, discovery had been provided "only in anticipation of [the] mediation and a settlement conference," (Def.'s Mem. 6), and it had involved only minimal exchange of documents and responses to interrogatories, (Def.'s Reply 2). Indeed, Plaintiff notes that Defendant had been "reluctan[t] to participate fully in discovery," leading to "limited production." (Pl.'s Opp'n 2.) This limited activity does not support a finding of waiver.

### C. Prejudice

Notwithstanding the above, "[t]he key to a waiver analysis is prejudice"; without prejudice, there can be no waiver of the right to arbitrate a dispute. *Sutherland*, 600 F. App'x at 8 (quoting *Thyssen, Inc.*, 310 F.3d at 105); *see Enron Power Mktg. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cnty.* (*In re Enron Corp.*), 364 B.R. 489, 511 (Bankr. S.D.N.Y. 2007) ("[I]t is the presence or absence of prejudice that is determinative of the issue of waiver."). Moreover, "[p]rejudice is not presumed based on the timing of [an] arbitration demand and . . . participation in litigation — *i.e.*, the first two prongs of the three-part waiver inquiry — standing alone." *Nat'l Union Fire Ins. Co. of Pittsburgh v. NCR Corp.*, 376 F. App'x 70, 72 (2d Cir. 2010) (citing *In re Crysen/Montenay Energy Co.*, 226 F.3d at 162–63).

The Second Circuit has recognized "two types of prejudice: substantive prejudice and prejudice due to excessive cost and time delay." *Sutherland*, 600 F. App'x at 8 (citing *Thyssen, Inc.*, 310 F.3d at 105). Substantive prejudice exists when, for example, "a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration." *Id.* (quoting *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991)). Prejudice due to excessive

---

1831096, at *3 (E.D.N.Y. May 4, 2017) (considering, *inter alia*, the parties' participation in court-sponsored mediation and concluding that the defendants "actively engaged in 'protracted litigation'"); *cf. S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 84 (2d Cir. 1998) (affirming district court's finding of waiver based on, *inter alia*, "extensive discovery requests" and "two settlement conferences").

16

cost and time delay may be found "when a party too long postpones his invocation of his contractual right to arbitration[] and thereby causes his adversary to incur unnecessary delay or expense." *Id.* (quoting *Kramer*, 943 F.2d at 179); *Nat'l Union Fire Ins. Co. of Pittsburgh*, 376 F. App'x at 72 ("Prejudice . . . 'refers to the inherent unfairness — in terms of delay, expense, or damage to a party's legal position — that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.'" (quoting *In re Crysen/Montenay Energy Co.*, 226 F.3d at 162–63)); *S & R Co. of Kingston*, 159 F.3d at 83–84 ("Prejudice results 'when a party seeking to compel arbitration engages in discovery procedures not available in arbitration, makes motions going to the merits of an adversary's claims, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense.'" (quoting *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993)) (citing *PPG Indus., Inc.*, 128 F.3d at 109)). A court will not find waiver where "delay in trial proceedings was not accompanied by substantial motion practice or discovery." *Sutherland*, 600 F. App'x at 8 (quoting *Thyssen, Inc.*, 301 F.3d at 105).

Relying on *In re Crysen/Montenay Energy Co.*, 226 F.3d at 162–63, Plaintiff argues he will be prejudiced if compelled to arbitrate because he has "expended substantial time, energy, and resources into this litigation." (Pl.'s Opp'n 3.) Plaintiff also notes that, if the Court compels arbitration, he will "be forced to start over on his own." (*Id.*)

Although the Court is sympathetic to Plaintiff's position, the unfairness he alleges does not rise to the level of prejudice under the law. Apart from time spent learning the Federal Rules of Civil Procedure and the Court's rules as a *pro se* litigant, Plaintiff has not identified any specific costs incurred, let alone excessive costs. (*Id.*); *Chehebar*, 2017 WL 946292, at *2 (noting that costs incidental to the motion practice alone are insufficient). Further, there have been no substantive motions, no court decisions adverse to Defendant, and no discovery that

17

would not otherwise be available in arbitration. (Def.'s Reply 2); *Sutherland*, 600 F. App'x at 8; *S & R Co. of Kingston*, 159 F.3d at 83–84. In addition, although Defendant did not move to compel arbitration until nearly one year after filing its answer, the docket reflects that Defendant moved soon after the court-ordered mediation on July 25, 2019, failed. (Def.'s Mot.)

Accordingly, viewing the facts in the light most favorable to Plaintiff, yet mindful that "[w]aiver is not to be lightly inferred," *Nicosia*, 815 F. App'x at 614 (quoting *Thyssen, Inc.*, 310 F.3d at 104–05), the Court concludes that Defendant has not waived its right to arbitrate by way of its litigation conduct and therefore grants Defendant's motion to stay the action and compel arbitration. In addition to determining whether Plaintiff's claims are arbitrable, the arbitrator will decide any threshold procedural questions, including whether Defendant waived the right to arbitrate by delaying and ignoring Plaintiff's requests to do so prior to the filing of this suit.

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion to stay the action and compel arbitration. The Court denies Defendant's request for attorneys' fees and costs associated with its motion. The Clerk of Court is directed to mail a copy of this Memorandum and Order to Plaintiff at the address of record.

Dated: November 19, 2020
      Brooklyn, New York

                                        SO ORDERED:

                                        s/ MKB

                                        MARGO K. BRODIE
                                        United States District Judge